WAUSAU MALT PRODUCTS COMPANY, Respondent, vs. CITIZENS STATE BANK OF WAUSAU, Appellant.

*March 6—April 3, 1934.*

For the appellant there was a brief by *Genrich & Genrich* of Wausau, and oral argument by *Fred W. Genrich.*

*Brayton E. Smith* of Wausau, for the respondent.

WICKHEM, J. This appeal raises the question as to the effect upon the right of a non-assenting depositor to maintain an action for the amount of its deposit, of a so-called bank stabilization agreement which had no binding force and effect until after the commencement of the depositor's

action. On January 30, 1933, when defendant bank closed its doors for the transaction of business, plaintiff had a balance to its credit on deposit with the defendant amounting to $980.19. It demanded payment thereof by February 1, 1933, and was refused.

Sec. 220.07 (16) (a), Stats. (sec. 3, ch. 15, Laws of Special Session 1931–1932), provides:

"Whenever the commissioner of banking, with a view to stabilizing and readjusting the banking structure of any bank, shall approve a stabilization and readjustment agreement entered into between such bank and the depositors and unsecured creditors of such bank which shall represent eighty per cent. of the amount of deposits and unsecured credits of such bank, then in such case, all other depositors and unsecured creditors shall be held to be subject to such stabilization and readjustment agreement to the same extent and same effect as if they had joined in execution thereof, and their claims shall be treated in all respects as if they had joined in the execution of such stabilization and readjustment agreement."

Plaintiff's deposit was made subsequent to the enactment of this section. The bank did not place its affairs and assets under the control of the commissioner of banking, pursuant to sec. 221.26, nor did the latter take possession of the property and business of the bank under sec. 220.08 (1). Instead, the bank invited its depositors and other creditors to enter into a stabilization and readjustment agreement under the provisions of sec. 220.07. Between January 30, 1933, and February 24th of the same year, depositors and unsecured creditors in excess of eighty-three per cent. signed this agreement. Plaintiff did not assent to the agreement. In substance the agreement provided for the payment of the full amount of the deposits in instalments over a term of five years. In accordance with sec. 220.07, application was made to the state board of review and the commissioner of

banking for approval of the stabilization agreement. This approval was given in a modified form, the board and the commissioner insisting that fifteen per cent. of the deposits be segregated and represented by trustee's certificates. The trust certificates entitled the depositors to *pro rata* participation in all sums realized by a liquidation of the trust *res*. An assessment of one hundred per cent. on the stock was also ordered. The defendant did not present the depositors with a formal agreement incorporating the changes insisted upon by the banking department, but certificates providing for deferred instalment payments amounting to eighty-five per cent., and trust certificates for the balance of fifteen per cent. were prepared, and the depositors notified to manifest their approval of the agreement by accepting these certificates.

On July 13, 1933, subsequent to the original submission of the case for decision, it was made to appear that at that time certificates had been accepted by depositors to the amount of ninety-four per cent. of the total deposits, but defendant was unable to prove that eighty per cent. of the depositors had accepted certificates by April 7, 1933, when the action was commenced, or to show that at any particular time prior to July 13th, more than eighty per cent. of the deposits were represented by accepted certificates.

Upon these facts the question is whether a dissenting depositor or creditor, pending the perfection of a stabilization agreement, by securing the assent of the banking commissioner and of the requisite number of depositors and creditors, may, by bringing an action, put his rights beyond the possibility of being affected by its subsequent perfection. At the outset it should be stated that the problem in this form involves no serious question of constitutional law. Plaintiff's deposit was made after the enactment of sec. 220.07, and this section does not impair the obligation of

plaintiff's contract. Nor may it successfully be contended unreasonably to interfere with the right of contract. The character of banking as an institution peculiarly calling for regulation and for the exercise of the police power in order to give adequate protection to the public is too well established to call for extended comment. *McConville v. Ft. Pierce B. & T. Co.* 101 Fla. 727, 135 South. 392; *Noble State Bank v. Haskell,* 219 U. S. 104, 31 Sup. Ct. 186; *Re Opinion of Justices,* 278 Mass. 607, 181 N. E. 833, 82 A. L. R. 1021.

It is our conclusion that the learned trial judge was in error in concluding that the rights of the plaintiff are to be fully and finally determined as of the date when it commenced its action to recover its deposit. It was the trial court's view that the original stabilization agreement came to naught because the commissioner of banking declined to approve it in the form presented. Literally this is true. A substantial modification of the agreement was not within the power of the banking commissioner under sec. 220.07. He did have, however, the right to withhold approval of the agreement as presented, and until his approval was given, the stabilization agreement had no binding force or effect. However, neither the withholding of approval nor the modification insisted upon were effective to break the continuity of the efforts to achieve a stabilization agreement, and when eighty per cent. or more of the depositors consented to the agreement as modified, it became effective. Does the fact that in the meantime plaintiff had commenced its action, compel the conclusion that the requisite approval by the depositors and creditors came too late to affect plaintiff's right of action? We cannot agree that it does. It cannot be supposed that the legislature intended to set up a scheme on a subject as vital to the interests of the people of the state of Wisconsin, that could be so easily and lightly brushed

aside and set at naught by the very persons at whom the act was particularly directed.

The principal difficulty in which the banks found themselves as a result of the depression came from a sharp decline in the liquidity of assets. This left the banks, whether solvent or not, unable to respond to the demands for cash on the part of their depositors and creditors. The crisis also brought with it, for various reasons, a distinct loss of confidence in financial institutions, so that while the banks were faced, on the one hand, with a reduction of their liquid assets, they were faced, on the other, with increasing demands for cash on the part of their depositors and creditors. The cash being insufficient to meet all the demands, there could be only one result if a continuance of existing conditions were permitted. The vigilant and suspicious depositors would exhaust the cash resources of the bank, leaving to the other depositors only such sums as would be produced by a liquidation of frozen or impaired assets. To meet this situation, and to permit the banks, in advance of the withdrawal of their cash, to put in execution a scheme fair to all depositors, sec. 220.07 was enacted. To attribute to the legislature a purpose to permit dissenting depositors, pending an effort to put this section into operation, to accomplish by action the very result that the section was designed to prevent, is to attribute to it the purpose to accomplish an absurdity.

The purpose of the statute, and its clear intent, is that the rights of depositors who are subject to the law to prosecute actions upon their deposits, are entirely contingent upon the successful completion of the stabilization agreement. If and when that agreement goes into force and effect, it terminates *ab initio* the right of a depositor to prosecute an action based upon the withholding of his deposit. This violates no constitutional right of any depositor situated as

was the plaintiff. Plaintiff made its deposits after the law was passed, and was subject to its provisions. Its contract must be assumed to have as a part of it the understanding that its right to claim its entire deposit in preference to other depositors is subject to being defeated *ab initio* by the completion of a stabilization agreement, and that this is true no matter at what stage of enforcement its cause of action is. Its success in this action makes it only a judgment creditor of the bank. Its rights as a depositor are merged in the judgment, but this does not prevent the court from perceiving that the basis of the judgment is a claim as a depositor which is subject to the stabilization agreement.

This conclusion makes it unnecessary to consider the effect of ch. 6, sec. 5, Laws of 1933. This seeks to validate all stabilization agreements in which the suggestions of the commissioner of banking have resulted in a modification of the scheme. It was the view of the trial court that this statute, if applied to cases of deposits made prior to its enactment, would result in an unconstitutional impairment of the obligation's of contract between the plaintiff and defendant. We refrain from expressing any opinion upon this question.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.