STATE EX REL. FITAS, on behalf of himself and all persons similarly situated, Petitioner, v. MILWAUKEE COUNTY and others, Respondents.

*No. State 54. Argued September 9, 1974.—Decided October 3, 1974.*
(Also reported in 221 N. W. 2d 902.)

For the petitioner there was a brief and oral argument by *Craig E. Miller,* chief staff counsel, Corrections Legal Services Program.

For the respondents Hon. Robert M. Curley, chief judge, circuit court, Milwaukee County, and Milwaukee County, there was a brief by *Robert P. Russell,* corpora-

tion counsel, and *George E. Rice,* deputy corporation counsel, and oral argument by *Mr. Rice.*

For the respondent Department of Health & Social Services the cause was argued by *Gary L. Carlson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

A brief amicus curiae was filed by *Howard B. Eisenberg,* state public defender.

HEFFERNAN, J.   This original action was brought to determine which branch of the government is required to appoint and compensate counsel required in administrative proceedings for the revocation of probation and parole. We conclude that, until such time as additional legislation may be adopted or until further order of the court, the public defender shall represent all indigent persons against whom proceedings for the revocation of probation or parole have been commenced in those instances where there has been an administrative determination that counsel is required.

Jay P. Fitas, the petitioner herein, was granted leave by this court to commence an original action in this court for the purpose of securing a declaration of the rights and duties of Milwaukee county and of the Department of Health & Social Services in respect to the appointment and compensation of counsel, when required, in probation and parole proceedings.

Fitas is a convicted person who had been upon conditional liberty under parole supervision. At the time the petition was filed on his behalf by counsel for the Corrections Legal Services Program, Fitas was confined to the Milwaukee County House of Correction awaiting an administrative hearing to determine whether he had violated conditions of his parole.  (He has since been admitted to bail.)  The Department of Health & Social Services made the preliminary determination mandated by *Gagnon v. Scarpelli* (1973), 411 U. S. 778, 93 Sup.

Ct. 1756, 36 L. Ed. 2d 656, and *State ex rel. Cresci v. Department of Health & Social Services* (1974), 62 Wis. 2d 400, 215 N. W. 2d 361, that Fitas was entitled to counsel. Fitas requested the Milwaukee Circuit Court, the sentencing court, to appoint counsel, but that court, Honorable ROBERT M. CURLEY presiding, refused to appoint counsel because he lacked statutory authority to do so and no Milwaukee county funds were available for this purpose. Fitas requested the Department of Health & Social Services to provide counsel, but the department also declined the appointment because it was beyond its authority and no funds had been appropriated for this purpose.

It was the problem this posed that caused this court on June 6, 1974, to grant leave to bring the original action. The public defender has filed a brief amicus curiae.

In the public defender's brief he recites the recent history of representation of indigent persons awaiting revocation of probation or parole. For one year—July 1, 1973, to June 30, 1974—the public defender, at the direction of this court, represented such defendants. This court then made the administrative determination that responsibility for such representation was not specifically imposed by sec. 257.23 ff, Stats, which creates the position and defines the duties of the public defender.

The public defender has recounted the year's experience of his office in giving this type of representation. There is nothing to dispute his contention that such representation met with the satisfaction of litigants, courts, and the Department of Health & Social Services. He has, while acknowledging the availability and expertise of his office to render such services, emphasized the additional manpower requirements a reassignment of these duties will place upon his office.

We find no clear-cut delineation in the statutes of the duties of any of the parties hereto in respect to appointment or compensation of counsel.

We conclude, without difficulty, that the appointment of counsel ought to be made by a judge or under the aegis of the judicial system. Attorneys are officers of the court and the duty to furnish representation derives from constitutional provisions that place the responsibility upon courts. That responsibility has been traditionally discharged by courts. *See, Carpenter v. Dane County* (1859), 9 Wis. 249 (\*274); *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799. It is within the inherent power of the courts to appoint counsel for the representation of indigents. It would thus clearly appear that, if in the course of any judicial or quasi-judicial proceedings within the territorial jurisdiction the power of the court is properly invoked to exercise its discretion in the appointment of counsel when such representation is required by law, it is within its inherent power to do so. We conclude that the circuit court for Milwaukee county had such authority. We do not, however, disapprove of the court's decision, in the exercise of discretion, to deny appointment of counsel in this instance or in similar cases, or its decision to refuse to impose liability upon the county of Milwaukee.

We find no argument of controlling merit that the duty of compensation is upon the county. The department argues that settled law requires that the county assume this financial obligation. It relies upon *Dane County v. Smith* (1861), 13 Wis. 654 (\*585), and *Carpenter v. Dane County* (1859), 9 Wis. 249 (\*274). In *Carpenter* this court required the county to pay counsel for an indigent defendant. In *Carpenter*, however, this court's emphasis was upon the fact that the prosecution had been brought by a county officer, the district attorney. We said:

". . . surely the citizens of a county are vitally more interested in saving an innocent man from unmerited punishment than in the conviction of a guilty one."

The court, in essence, found the obligation to defend reciprocal to the prosecution function paid for by the county. Were we to follow this rationale to its logical conclusion, the department is hoist on its own petard, for a revocation proceeding is brought and paid for by employees of the state, not employees of the county of Milwaukee.

We find no authority that requires us to impose the obligation to compensate counsel upon the county.

The department's obligation to do so is almost as vague. The rationale of *Carpenter, supra,* is consistent with Milwaukee county's claim that, since the department initiated the proceedings, it should pay for them, including counsel fees. We do not, however, consider the argument persuasive.

We cannot agree that the failure of the legislature to enact Assembly Bill 1326, a bill that would have imposed the obligation to pay counsel upon the county, is evidence of the legislative intent that counties not pay counsel fees. The nonpassage of a bill may be explainable for a number of reasons unrelated to the merits of the legislation. In the instant case the bill simply failed to pass pursuant to the scheduling determined by the legislature in SJR-21 of the 1971-1973 legislature. The most that can be said in favor of the county's argument is that the majority of the legislators did not consider it a priority bill. The obvious purpose of the bill, in any event, was unrelated to the issue here. The purpose was to make the practice then utilized in Milwaukee county at probation hearings the uniform practice in the state. Uniformity was achieved by a separate act, ch. 125, sec. 517, Laws of 1971.

The statutes tend in some respects to support the county's proposition that the responsibility is the department's. The department contends that counsel fees are not included under the appropriation for Correctional

Services, sec. 20.435 (3) (a), Stats. The Executive Budget for 1973–1975, February 1973, II–19, however, explained the purpose of the appropriation:

"The Corrections Services Program is carried out by the Division of Corrections which provides direction and *administrative services* to four adult and four juvenile institutions, a *statewide probation and parole program* including foster care and a minimum security camp system for both adults and juveniles." (Emphasis added.)

If the statute and its meaning is broad enough to authorize expenditures for prosecuting a revocation proceeding, it would appear to be broad enough to authorize appointment of counsel necessitated by those proceedings. To conclude as we do that the department could, under its authority, compensate counsel is not, however, to conclude that it ought to.

We have previously noted that appointment of counsel is a judicial function and not an administrative one— at least when the genesis of the administrative proceeding is the status originally created by the judgment or conviction imposed by a court.

Moreover, the concentration of power in an administrative agency to cite for a violation, prosecute, and defend is subject to abuse, and as a consequence must be hedged about with safeguards. We have never defined the limits of the Department of Health & Social Services in running "the whole show" in a revocation hearing. The danger of the over-concentration of power was commented upon by Mr. Chief Justice HALLOWS in his dissent to *Cresci, supra.*

It would appear the more prudent position, both in constitutional terms and in the interpretation of the department's appropriation, to conclude that the compensation of counsel by the department is not permitted. Not only does this comport with the administrative interpretation the department has given its governing statutes, but

also avoids a possible unconstitutional concentration of power in the department.

We conclude that public policy will best be served by designating the state public defender as counsel in all probation and parole revocation proceedings where an administrative determination has been made that counsel is necessary. In such an event, the department need merely notify the public defender that an occasion has arisen which requires his services to represent an indigent under the continuing duty placed upon him by this court.

We conclude that the tenor of the authority conferred upon the public defender is broad enough, temporarily at least, to encompass these duties. It is clear, however, that such duties are not specifically set forth.

Nevertheless, the legislature in 1973 was aware of the then existing practice of having the public defender represent indigents in parole and probation revocation hearings. In June of 1973, Mr. Justice HORACE WILKIE, speaking for the court in explanation of the proposed court budget, stated:

"*Public Defender*—In addition to the present public defender program of providing appellate services to a small percentage of the indigents appealing, this program is expected to add legal staff to give the office the capability of representing all indigent criminal defendants from outside Milwaukee County, who seek appellate or post-conviction review of their convictions. This program also includes the staff needed to *provide legal representation to individuals outside Milwaukee County on probation or parole revocation hearings.*[1] Finally the capability to allow the State Public Defender to represent inmates in state correctional, juvenile and mental institutions in habeas corpus actions is included." (Emphasis added.)

We cannot say with authority that the legislature, being aware of the Public Defender's then current prac-

---

[1] It should be noted that Milwaukee County at this time had a separate and independent probation department.

tice, therefore gave specific approval to the extension of the duties of the office of public defender. It is persuasive, however, of the proposition that the legislature did not intend to eliminate the then current practice of having the public defender represent persons accused of probation or parole violation.

Past experience has proved that the public defender can capably discharge this duty. His amicus brief invites the court's attention to the severe strain that these additional duties will place upon that office. The constitutional reality is, however, that counsel must be provided under the circumstances of this case and compensation must be paid.

We conclude, as a matter of administrative policy, since the responsibility does not fall by law on any other agency of the government, that the cost should be borne by the budget of the supreme court under the office of the state public defender. The legal duty to appoint counsel is upon the judicial system as a matter of our superintending power. We conclude that, in this instance where the problem of appointment will be recurrent and statewide, such power of appointment should be exercised by this court rather than by the trial courts.

The public defender is hereby appointed to represent all indigent persons in probation and parole revocation proceedings upon notification by the Department of Health & Social Services that representation, under existing standards, is appropriate in a particular case.

*By the Court.*—Rights declared.