NODELL INVESTMENT CORP., and others, Appellants, v. CITY OF GLENDALE, and another, Respondents.

*No. 75–506. Argued May 3, 1977.—Decided June 1, 1977.*
(Also reported in 254 N.W.2d 310.)

For the appellants there were briefs and oral argument by *Harry W. Theuerkauf* of Milwaukee.

For the respondent there were briefs by *L. C. Hammond, Jr., Michael J. Spector, James H. Baxter III* and *Quarles & Brady,* and oral argument by *Messrs. Spector* and *Baxter.*

ABRAHAMSON, J. The determinative issue for this court on appeal is whether a property owner may challenge as unconstitutional the method of administering and applying an apparently constitutional ordinance by a declaratory judgment action in the circuit court without first appealing to the zoning board of appeals. The circuit court held that since the property owners had failed to exhaust the available administrative remedies, the court did not possess jurisdiction over the subject matter of the controversy. We agree.

On or about March 5, 1956, the Echo Bowl partnership applied to the City of Glendale for a building permit to construct a bowling alley. Pursuant to city ordinances, the application was referred to the city plan commission which approved the application on the condition that the partnership dedicate to the city a strip of land along North Port Washington Road for road expansion pur-

poses. To obtain the permit the dedication was made on or about April 2, 1956.

On or about April 18, 1966, the Nodell Investment Corporation applied to the City of Glendale for a building permit to construct an automobile showroom and garage. An initial "foundation permit" was granted to allow the project to begin, but the plan commission withheld a final permit pending the dedication to the city of a strip of land along North Port Washington Road for road expansion purposes. Nodell Investment Corporation complied with the condition and made the dedication on August 30, 1966, allegedly because of increasing construction costs and the continued interest charges on loans taken to complete construction.

The complaint alleges that prior to and subsequent to the dedications mentioned above, the city plan commission required as a condition of the granting of building or occupancy permits gratuitous dedication of land along North Port Washington Road by several other property owners.

The North Port Washington road widening project began in 1974, and the State began purchasing frontage property not previously dedicated to the city. The two property owners described above commenced this action in 1975 under the Declaratory Judgment Act[1] seeking to have their 1956 and 1966 deeds to the city declared

---

[1] Sec. 269.56, Stats. 1973, now sec. 806.04, Stats.

This section grants to courts of record the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for." Sec. 269.56(1), Stats. 1973. Sub. (2) further allows that "[a]ny person interested under a deed . . . or whose rights, status or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder." Sec. 269.56(2), Stats. 1973.

null and void. They alleged that the plan commission's administration of the Glendale building permit ordinance, sec. 85.17–(9),[2] violated the constitutional guarantees of equal protection of the laws and just compensation for private property taken for public use. The trial court sustained demurrers to the complaint, and this appeal followed.

---

[2] The ordinance pursuant to which the City Plan Commission approves permits is as follows:

"Sec. 85.17–(9), Glendale City Ordinances:

"(9) No permit for the construction, erection, alteration or moving of any business, factory, commercial uses, buildings, or structures, shall be issued unless it has been found as a fact by the City Plan Commission of the City of Glendale, by at least a majority vote thereof, after an examination of the application for a permit which shall include a site plan design, exterior, elevations of the building and accurate drawings, sketches or pictures of all sides and views of the same, grades of the building site, and landscaping plans and specifications or a statement of intent not to landscape the vacant area surrounding said building or structure, that the proposed grades of the building site, and landscaping of said building site, or the absence of landscaping as the case may be will not cause the general exterior appeal, functional plan or setting of such building or structure to be such as to cause a substantial depreciation in the property values of said neighborhood wherein said building is proposed to be located. Before a permit shall be issued for such building or structure in all cases (except where the City Plan Commission has found it to be a fact that the absence of landscaping will not cause a substantial depreciation in the property value of said neighborhood) the applicant shall give a bond to the City of Glendale in a sum to be fixed by the City Plan Commission to the effect that he will within the time to be set by it, complete the landscaping according to the landscaping plans and specifications filed by said applicant. This bond shall be in addition to any other bond or surety which may be required by other applicable ordinances of the City of Glendale. No occupancy permit shall be issued for such building or structure until the landscaping of the building site as set forth by such landscaping plans and specifications has been completed. The proceedings after application has been made to the building inspector for the application permit shall be as set in Subsections (8), (9) and (10) of Section 8.07 of the Glendale Code."

The parties agree that the plan commission required applicants for building permits to deed strips of street frontage to the city, without receiving the city's payment therefor, as a condition for issuance of the permits pursuant to ordinance sec. 85.17–(9). The parties further agree that at all times material to the controversy the City of Glendale had in operation a board of appeals[3] to which grievances concerning the administration of city zoning ordinances may be taken,[4] as mandated by sec. 62.23(7)(e)1, Stats.[5] The powers of the board are set

[3] On April 17, 1951, the Common Council of the City of Glendale enacted the following ordinance:

"SECTION VI. There is hereby created a 'Board of Appeals', which shall be appointed by the Mayor of the said City, as provided in Section 62.23(7)(e) of Wisconsin Statutes, whose powers, procedure and jurisdiction shall be in accordance with and as provided for under subparagraphs 7, 8 and 9 of said subsection."

[4] Sec. 62.23(7)(e), Stats., provides in relevant part as follows:

"4. Appeals to the board of appeals may be taken by any person aggrieved . . . by any decision of the administrative officer.

". . .

"6. The board of appeals shall fix a reasonable time for the hearing of the appeal . . . and decide the same within a reasonable time. . . .

". . . .

"8. In exercising the above mentioned powers such board may, in conformity with the provisions of such section, reverse or affirm, wholly or partly, or may modify the order, requirement, decision of determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken, and may issue or direct the issue of a permit."

[5] Sec. 62.23(7)(e)1, Stats.:

"(e) *Board of appeals.* 1. The council which enacts zoning regulations pursuant to this section shall by ordinance provide for the appointment of a board of appeals, and shall provide in such regulations that said board of appeals may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or

forth in sec. 62.23(7) (e)7, Stats.[6] and they include the power to "hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this section or of any ordinance adopted pursuant thereto." Sec. 62.37(7) (e), Stats., provides for judicial review of the decision of the board of appeals.[7] The property owners concede in their statement

specific rules therein contained. Nothing in this subdivision shall preclude the granting of special exceptions by the city plan commission or the common council in accordance with the zoning regulations adopted pursuant to this section which were in effect on July 7, 1973 or adopted after that date."

[6] Sec. 62.23(7) (e)7, Stats.:

"7. The board of appeals shall have the following powers: To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this section or of any ordinance adopted pursuant thereto; to hear and decide special exception to the terms of the ordinance upon which such board is required to pass under such ordinance; to authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in practical difficulty or unnecessary hardship, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done. The board may permit in appropriate cases, and subject to appropriate conditions and safeguards in harmony with the general purpose and intent of the ordinance, a building or premises to be erected or used for such public utility purposes in any location which is reasonably necessary for the public convenience and welfare."

[7] Sec. 62.23(7) (e), Stats., provides in relevant part as follows:

"10. Any person or persons, jointly or severally aggrieved by any decision of the board of appeals . . . may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. . . .

"11. Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of appeals in order to review such decision of the board of appeals, and shall prescribe

of facts that they did not challenge before the board of appeals the validity of the plan commission's conditional building permits.

In a continuing line of cases this court has stated that where a statute sets forth a procedure for review of administrative action and court review of the administrative decision, such remedy is exclusive and must be employed before other remedies are used. In *Ferch v. Schroedel*, 241 Wis. 457, 461, 6 N.W.2d 176 (1942), this court refused to allow a lot owner to enjoin the holders of a building permit, holding that the remedy was to follow the statutory route for judicial review of the issuance of a permit. The court adopted the language of *State ex rel. Martin v. Juneau*, 238 Wis. 564, 568, 300 N.W. 187 (1941):

" 'This court has repeatedly held that where a specified method of review is prescribed in an act creating a new right or conferring a new power, the method so prescribed is exclusive and if review is sought that method must be pursued.' Citing *State ex rel. Attorney General v. Fasekas*, 223 Wis. 356, 362, 269 N.W. 700; *Corstvet v. Bank of Deerfield*, 220 Wis. 209, 263 N.W. 687.

"Plaintiff having failed to follow the required statutory procedure, the court below had no jurisdiction in the

therein the time within which a return thereto must be made and served upon the relator's attorney, which shall not be less than 10 days. . . .

". . .

"13. If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence, or appoint a referee to take such evidence as it may direct and to report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

". . .

"15. All issues in any proceedings under this section shall have preference over all other civil actions and proceedings."

instant case, and should have dismissed the action on that ground . . . ." 241 Wis.2d at 461.

See also *Master Disposal v. Village of Menomonee Falls,* 60 Wis.2d 653, 656, 657, 211 N.W.2d 477 (1973) ; *Corstvet v. Bank of Deerfield,* 220 Wis. 209, 232, 233, 263 N.W. 687 (1936).

In *Jefferson County v. Timmel,* 261 Wis. 39, 63, 51 N.W.2d 518 (1952), the court construed sec. 59.99, Stats., the county analogue of sub. 62.23 (7) (e), as follows:

"8 McQuillin, Mun. Corp. (3d ed.), p. 538, sec. 25.283, states that the authorities are in conflict as to whether a property owner must first pursue and exhaust the administrative remedy available to him under a zoning ordinance or statute before resorting to the courts for injunctive or other relief. We believe the sounder rule is that which holds that if a zoning ordinance provides for an appeal to a board of adjustment created pursuant to a statute similar to sec. 59.99 from an adverse ruling of an administrative officer or board in administering the ordinance, and court review of the decision or order of the board of adjustment is specifically provided for by statute, such remedy is exclusive of all other remedies and must be exhausted before a party can resort to the courts for other relief except in cases where the validity of the ordinance itself is attacked."

See also *Kmiec v. Town of Spider Lake,* 60 Wis.2d 640, 646, 211 N.W.2d 471 (1973), where the above language from *Timmel* was quoted with approval in the context of a case involving sub. 62.23 (7) (e), Stats.; *Beres v. New Berlin,* 34 Wis.2d 229, 148 N.W.2d 653 (1967), in which we held that the trial court had properly quashed a writ of mandamus where the landowner did not appeal to the board of appeals.[8]

---

[8] "Sec. 62.23 (7) (e), Stats., requires city councils to establish boards of zoning appeals and sets forth certain required procedures with regard thereto. Sec. 62.23 (7) (e) 11 provides for judicial review by way of a writ of certiorari. As pointed out in the respondent's brief, section 12.19 of the New Berlin Code creates

These cases set forth the general doctrine that judicial relief will be denied until the parties have exhausted their administrative remedies; the parties must complete the administrative proceedings before they come to court. The rule of exhaustion of administrative remedies is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. The premise of the exhaustion rule is that the administrative remedy (1) is available to the party on his initiative, (2) relatively rapidly, and (3) will protect the party's claim of right.[9] The reasons for the rule requiring exhaustion are essentially the same as those for the rule that appeals may be taken only from a final judgment of a trial court.[10]

Although the exhaustion requirement is sometimes expressed in absolute terms and in terms of a court's subject-matter jurisdiction,[11] the cases demonstrate that

---

such a board of appeals to which the petitioner could have appealed. The appellant's petition for the writ did not allege that he had exhausted this administrative remedy. He does not now maintain that he did . . . . In the absence of such administrative action, the petitioner's grievances, which might have been correctable by the board, cannot be brought before a court." 34 Wis.2d at 234–235. *See also State ex rel. Miller v. Manders,* 2 Wis.2d 365, 374, 86 N.W.2d 469 (1957).

[9] Jaffe, *Judicial Control of Administrative Action* 424 (1965).

[10] Jaffe, *supra,* note 9, at 424, 425; Cooper, *State Administrative Law* 573 (1965).

[11] Our court has commented as follows on the question of whether exhaustion of administrative remedies is a question of subject matter jurisdiction. In *Perkins v. Peacock,* 263 Wis. 644, 658, 53 N.W.2d 536 (1953), this court said:

"From our examination of the authorities reviewed in this opinion we arrive at certain definite conclusions. One is that whether a statutory remedy of appeal is the exclusive remedy of an aggrieved party to review jurisdictional defects in proce-

sometimes exhaustion is required and other times not and that the rule of exhaustion has numerous exceptions.[12] Our court and federal and state courts have

dure, or abuse of statutory power, depends upon legislative intent as construed by the courts, and whether such right of appeal is adequate to permit review of such matters. . . .

"Even in those cases wherein this court has construed a statutory right of appeal as being intended by the legislature to be the exclusive remedy for reviewing jurisdictional defects in procedure, there may be exceptional cases where such right of appeal would be inadequate for such purpose and certiorari might lie. . . ."

In *Wisconsin Collectors Asso. v. Thorp Finance Corp.*, 32 Wis.2d 36, 46, 47, 145 N.W.2d 33 (1966), the court said:

"Although there are a number of decisions of this court which relate to the failure to exhaust administrative remedies, none of them actually holds that such failure results in the court's loss of subject-matter jurisdiction. *Green v. Jones* (1964), 23 Wis.(2d) 551, 128 N.W.(2d) 1; *Cobb v. Public Service Comm.* (1961), 12 Wis.(2d) 441, 107 N.W.(2d) 595; *James Conroy Family Co. v. Milwaukee* (1944), 246 Wis. 258, 16 N.W.(2d) 814."

In *Kaski v. First Fed. S. & L. Assoc. of Madison*, 72 Wis.2d 132, 143, 240 N.W.2d 367 (1976), this court commented about exhaustion of remedies as follows:

"In general, however, it can be said that, unless exclusive jurisdiction is given to the administrative agency by statute, a court has subject-matter jurisdiction regardless of whether a litigant ought to exhaust his administrative remedies before submitting his case to the courts."

[12] The commentators have classified the reasons for excusing exhaustion of administrative remedies as follows:

(1) The agency has no jurisdiction to act in the matter.

(2) The administrative action is fatally void.

(3) A question of law is involved in which the administrative agency's expertise is not an important factor.

(4) A substantial constitutional question is involved.

(5) The administrative remedy is inadequate to avoid irreparable harm.

(6) Recourse to the administrative agency would be a futile or useless act.

Cooper, *supra* note 10, at 577–581; Jaffe, *supra* note 9, at 426–449; Davis, *Administrative Law Treatise*, secs. 20.04, 20.05, 20.07, 20.10 (1958).

been willing to assume jurisdiction of a case, notwithstanding a party's failure to exhaust administrative remedies, where the court finds that the reasons supporting the exhaustion rule are lacking. In *Kmiec v. Town of Spider Lake*, 60 Wis.2d 640, 645, 211 N.W.2d 471 (1973), this court recognized a "well-defined distinction in applying this judicial policy [of exhaustion of remedies] to the statutory administrative remedies in zoning cases. . . . [A] challenge to the constitutional validity of a zoning ordinance presents a question of law. Such a challenge may properly be made by commencing an action for declaratory judgment and the doctrine of exhaustion of remedies is not applicable. *Compare: Master Disposal v. Village of Menomonee Falls* [60 Wis.2d 653, 211 N.W.2d 477 (1973)]." The reason for this exception is that an appeal to the administrative agency would not have afforded the party adequate relief since the administrative agency has no right to repeal or declare unconstitutional zoning ordinances enacted by the legislative body from which the board derives its existence.

By contrast, in this case the board of appeals does have the power to invalidate the conditions imposed by the plan commission and to afford relief to the property owners without invalidating the ordinance itself. Both parties concede that this case does not involve declaring an ordinance invalid. Sec. 85.17(9) of the city ordinances neither requires nor expressly authorizes the plan commission to condition approval of the issuance of building permits on the dedication of land. Under sub. 62.23(7) (e)8, Stats., the board is empowered to exercise the same power as the plan commission and could have issued the permit without the condition for dedicating land. The board did not have the opportunity to do so because the landowners failed to assert their rights by

For a note analyzing state court modifications and limitations on the exhaustion rule, *see* Note, 50 Colum. L. Rev. 847 (1950).

taking an appeal. This court in *Beres v. New Berlin, supra,* 34 Wis.2d at 235, commented about similar circumstances:

"In the absence of such administrative action [appeal to the board of appeals], the petitioner's grievances *which might have been correctable by the board,* cannot be brought before a court." (Emphasis added.)

We do not believe the legislature intended to allow a property owner to accept a building permit, to submit to the conditions imposed therein, and then subsequently to attack the conditions in a judicial proceeding.[13]  The

---

[13] The property owners seem to argue in their brief that the doctrine of exhaustion of remedies is not applicable because they did not challenge the plan commission by taking the first administrative step of appealing to the board. The property owners are correct that the doctrine of exhaustion of remedies contemplates a situation where some administrative action has begun but has not been completed. The doctrine does not apply where there is no administrative proceeding under way. By contrast, the primary-jurisdiction (or prior resort) rule applies where there has been a total absence of any formal proceedings before the agency. *Wis. Collectors Assn. v. Thorp Finance Co.,* 32 Wis.2d 36, 47, 145 N.W.2d 33 (1966); *Sawyer v. Morgan,* 56 Wis.2d 70, 79, 80, 201 N.W.2d 528 (1972); *State v. WERC,* 65 Wis.2d 624, 635, 223 N.W.2d 543 (1974). The purpose of the primary-jurisdiction rule is to promote proper relations between courts and administrative agencies in determining whether the court or agency should make the initial determination.

Cooper, *supra* note 10, at pp. 572, 573, comments about the two doctrines as follows:

"Considering the doctrines of prior resort and of exhaustion together, the net result is in effect that the administrative agency is entitled to the first and the next-to-the-last word. It must be given an opportunity to speak first (this is the doctrine of prior resort) and it cannot be deprived of the power to pass upon the case until it has spoken its final word with reference thereto. The last word is the court's, on judicial review.

"While the requirement of exhausting administrative remedies has a somewhat different historical background than the rule of

legislature has fashioned a procedure for the property owner to contest adverse rulings before the board of appeals, the unit of government which is closest to the people and which should be given the opportunity to provide a remedy. If the condition imposed by the plan commission had been found invalid, the board could have, if it believed it necessary or appropriate, imposed a different condition which would be lawful. We believe that the legislature intended this type of dispute to be resolved initially by the local administrative agency and thereafter, if necessary, in court by writ of certiorari. The property owners, having failed to utilize available administrative remedies provided by law, are precluded from judicial relief at this time.

*By the Court.*—Order affirmed.

prior resort, yet the two doctrines have developed into complementary parts of a general principle which ordinarily serves to preclude judicial consideration of a question while there remains any possibility of further administrative action. The state courts often refer to the two principles interchangeably, and it is sometimes difficult to tell whether a court's refusal of jurisdiction is premised principally on one of these two rules or on the other . . . . Not only are the two doctrines complementary; they are sometimes confused." (Footnotes omitted.)

*See also Wis. Collectors Assoc. v. Thorp Finance Corp.*, 32 Wis.2d 36, 48, 145 N.W.2d 33 (1966), where this court recognized the difficulty at times of choosing the applicable doctrine.

In the case at bar administrative action had begun—there was an application for the issuance of a building permit; there was preliminary approval of the permit; there was review by the city plan commission and final approval of the permit subject to a condition. The next step in the administrative process was appeal to the board. Accordingly, we believe this case involves the doctrine of exhaustion of remedies.