COUNTY OF LA CROSSE, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Defendant-Respondent,†

WISCONSIN PROFESSIONAL POLICE ASSOCIATION,
Intervenor.††

Court of Appeals

*No. 90-2739. Submitted on briefs March 15, 1991.—Decided
June 18, 1992.*

(Also reported in 488 N.W.2d 94.)

† Petition to review granted.
†† Petition to review granted.

158

For the petitioner-appellant the cause was submitted on the briefs of *William A. Shepherd,* assistant corporation counsel for the County of La Crosse.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

For the intervenor the cause was submitted on the brief of *Richard Thal* of *Cullen, Weston, Pines & Bach* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. In this appeal, we decide that whether La Crosse County shall classify its jailers as protective occupation participants in the Wisconsin Retirement System is not a mandatory subject of bargaining under sec. 111.70(1)(a), Stats. We conclude that classification of participating employees in the Wisconsin Retirement System as protective occupation participants through collective bargaining is incompatible with the public employee trust fund law, ch. 40, Stats., except as specifically authorized by the legislature. We therefore reverse the order of the circuit court which affirmed a contrary declaratory ruling of the Wisconsin Employment Relations Commission (WERC).

## BACKGROUND

In collective bargaining with the County for a 1989–1990 contract, the Wisconsin Professional Police Association (WPPA) made the following proposal: "Effective January 1, 1990, the County shall pay the full amount of the established employer's and employee's contribution rates of Protective Service schedule for all deputies and jailers covered by this agreement." To implement WPPA's proposal the County must classify its jailers as protective occupation participants, sec. 40.02(48)(a), Stats., and certify the names of such participants to the Department of Employe Trust Funds (DETF) pursuant to sec. 40.06(1)(d), Stats.

Section 40.02(48)(a), Stats., defines "protective occupation participant" to "mean any participant whose

161

principal duties are determined by the participating employer . . . to involve active law enforcement or active fire suppression or prevention, provided the duties require frequent exposure to a high degree of danger or peril and also require a high degree of physical conditioning." It is undisputed that the County is a participating employer in the Wisconsin Retirement System and that the County's jailers are participants.

Section 40.06(1)(d), Stats., requires that each participating employer notify DETF of the names of all participating employees classified as protective occupation participants. Section 40.02(48)(am), Stats., describes the notification process as certification.[1] An employee may appeal the participating employer's failure or refusal to classify the employee as a protective occupation participant to DETF and the Employe Trust Funds Board (ETFB). Section 40.06(1)(e), Stats. DETF may review any such determination by the employer on its own initiative and appeal the determination to ETFB. Section 40.06(1)(em), Stats.

On August 1, 1989, the County petitioned WERC pursuant to sec. 111.70(4)(b), Stats.,[2] for a declaratory ruling that WPPA's proposal was not a mandatory sub-

[1] Section 40.02(48)(am), Stats., provides in part: " 'Protective occupation participant' includes any participant whose name is certified to the [public employe trust] fund as provided in s. 40.06(1)(d) and (dm) and who is a . . .." Synonyms of certify include "verify," "validate," and "guarantee." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 339 (2d ed., unabridged, 1987).

[2] Section 111.70(4)(b), Stats., provides in part: "Whenever a dispute arises between a municipal employer and a union of its employes concerning the duty to bargain on any subject, the dispute shall be resolved by the commission on petition for a declaratory ruling."

ject of bargaining. WERC found that WPPA's proposal related primarily to wages and was thus a mandatory subject of bargaining under sec. 111.70(1)(a), Stats. The circuit court affirmed.

## STANDARD OF REVIEW

WERC acknowledges that this appeal involves the relationship between the Municipal Employment Relations Act (MERA) and ch. 40, Stats., and thus we do not give weight to WERC's determination. *City of Brookfield v. WERC*, 87 Wis. 2d 819, 826-27, 275 N.W.2d 723, 726-27 (1979). The interpretation and harmonization of ch. 40 and MERA is a judicial function. *Id.* at 831, 275 N.W.2d at 729 (court fulfilled "exclusive judicial role" when it interpreted and harmonized ch. 62, Stats., and what is now sec. 111.70(1)(a), Stats.).

## I.

## DUTY TO BARGAIN

Section 111.70(1)(a), Stats., imposes on the municipal employer the duty to bargain with the representative of its employees with respect to wages, hours and conditions of employment. However, the municipal employer is generally not required to bargain on subjects reserved to management and direction of the governmental unit. *Id.* The County argues that the right to determine whether the principal duties of its jailers involve active law enforcement is an important management right which should be reserved to the County and the sheriff.

Section 111.70(1)(a), Stats., "necessarily presents certain tensions and difficulties in its application." *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 8, 357

N.W.2d 534, 538 (1984). These tensions generally arise when a proposal touches simultaneously upon wages, hours and conditions of employment and upon managerial decision making or public policy. *Id.* To resolve a conflict, the Wisconsin Supreme Court has adopted a "primarily related" standard. *Id.* This standard requires a balancing of the employees' interest in wages, hours and conditions of employment and the public employer's interest in management prerogatives or public policy. *Id.* at 9, 357 N.W.2d at 538.

■

However, the balancing test assumes that the proposal is one with respect to which each party is free to bargain. The public employer is not free to bargain with respect to a proposal which would authorize a violation of public policy or a statute. *Glendale Professional Policemen's Ass'n v. Glendale,* 83 Wis. 2d 90, 106, 264 N.W.2d 594, 602 (1978); *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 612, 250 N.W.2d 696, 701 (1977), *rev'd on other grounds, City of Madison v. Madison Professional Police Officers Ass'n,* 144 Wis. 2d 576, 425 N.W.2d 8 (1988). The same principle logically extends to a proposal which requires the public employer to fail to perform a duty imposed upon it by statute or to perform that duty in a way contrary to the policy and purpose of the statute.

■

WPPA's proposal requires that the County neglect to perform its duty under sec. 40.02(48)(a), Stats., to determine whether its jailers qualify as protective occupation participants. We conclude that WPPA's proposal is contrary to the policy and purpose of the public employe trust fund law. In Part II, we examine the County's duty under sec. 40.02(48)(a) in the context of the policy and purpose of public employee trust fund law.

## II.

## PARTICIPATING EMPLOYER'S DUTY TO DETERMINE EMPLOYEES' STATUS

### A.

WPPA contends that its proposal relates solely to the employees' deferred level of compensation which we have held is a mandatory subject of bargaining. *City of Brookfield v. WERC,* 153 Wis. 2d 238, 242–43, 450 N.W.2d 495, 497 (Ct. App. 1989) (*Brookfield* II). WERC agrees and also relies on *Brookfield II.* WERC concluded: "In essence, [WPPA's] proposal seeks to improve the level of deferred compensation which [an] employe will be entitled to receive for providing the County with employment service."

■

*Brookfield II* is inapposite. In that case, the union sought to bargain on its proposal that the city provide group health benefits to employees who retired during the term of the collective bargaining agreement. The city was free to bargain on the union's proposal unconstrained by statute. Here, sec. 40.02(48)(a), Stats., requires that the County determine whether its jailers qualify as protective occupation participants. The County lacks the power in a collective bargaining agreement or otherwise to make a final determination that its jailers are protective occupation participants; its decision is subject to review and appeal by DETF under sec. 40.06(1)(em), Stats.

■

We conclude that the duty imposed on the County to determine the status of participating employees in the Wisconsin retirement system is part of the legislative plan to ensure the integrity of the public employe trust

fund.[3] The legislature was aware that the treatment of "protectives" in early retirement and pension plans had led to actuarially unsound systems. *See* Report and Recommendations of the Joint Legislative Interim Committee on Pension and Retirement Plans, Senate Journal, Supplement, Sixty-Eighth Session at 6, 19–20, 66–67, 71, and 79 (1947). It was also aware that the requirement of limited tenure in protective occupations creates special retirement problems. Governor's Retirement Study Commission Final Report, January 15, 1959.

In 1964, the Retirement Research Council (RRC)[4] noted that "[o]ne of the most troublesome problem areas in the development of a sound retirement program for public employes in Wisconsin centers around the benefit program[s] for employes in what are commonly referred to as the protective occupations." RRC Staff Report No. 10 at 1 (1964). RRC noted that since coverage of protective occupation employees in 1948, the legislature had often been successfully petitioned to add additional employment categories within the special retirement benefit programs. *Id.* at 1–2. RRC stated: "The requests of additional groups for inclusion in such programs have multiplied in recent years, posing a serious problem for the legislature in attempting to maintain some sem-

---

[3]Section 40.01(2), Stats., provides in part:

> The public employe trust fund is a public trust and shall be managed, administered, invested and otherwise dealt with solely for the purpose of ensuring the fulfillment at the lowest possible cost of the benefit commitments to participants, as set forth in this chapter, and shall not be used for any other purpose.

[4]The Retirement Research Council was created by sec. 4, ch. 395, Laws of 1959. It has been renamed the Retirement Research Committee. *See* sec. 13.51, Stats. RRC provides a continuing review and study of the retirement benefits which the state provides to public employees. Section 13.51(1), Stats.

blance of order and equity in the development of the retirement and other related benefit programs." *Id.* at 2.

In 1967, the legislature lowered the normal retirement age and years-of-service requirement for protective occupation participants in the Wisconsin retirement fund. Chapter 355, Laws of 1967. "Protective occupation participant" was redefined in section 2 of the law. The Joint Survey Committee on Retirement Systems (JSCRS)[5] recommended this legislation as "in the best public interest." Appendix to 1967 S.B. 415, Report by Joint Survey Committee on Retirement Systems, at 94.

The JSCRS report to the legislature incorporated a portion of RRC's study of the retirement age and years-of-service pattern for protective occupation employees in the retirement systems of other states. RRC concluded that "[a]n individual whose principal duties do not consist of 51% or more of his work time being devoted to active law enforcement or active fire suppression would not be eligible for protective occupation membership." *Id.* at 93. RRC stated that "[i]t is assumed that an individual's duties, under the protective occupation philosophy, would subject him to periods of great mental and physical stress as well as possible personal injury or perhaps even death," and that "[t]hese employes must be able to undergo great mental and physical strain on occasion." *Id.* at 93–94.

It is evident that RRC and JSCRS considered that the status of protective occupation participant would be limited to a narrow class of employees meeting stringent

---

[5]The Joint Survey Committee on Retirement Systems reports to the legislature as to the desirability of legislative proposals affecting retirement and pension plans for public employees. Section 13.50(6)(a), Stats. JSCRS was created by ch. 376, Laws of 1947.

167

standards. Those standards remain unchanged in sec. 40.02(48)(a), Stats.

What has changed is the degree of state control over the determination by the municipal employer that an employee is a protective occupation participant.[6] In the 1989 executive budget bill, 1989 S.B. 31, sec. 815e, the governor recommended amendments to sec. 40.02(48), Stats., which would have required DETF to approve or deny each classification of a participant as a protective occupation participant based upon DETF's determination whether the employee's occupation met the statutory requirements. 1989 S.B. 31 (analysis by the Legislative Reference Bureau at 384-85). However, upon recommendation of JSCRS, these amendments were deleted from the budget bill. JSCRS recommended "greater study and development." 1989 S.B. 31, Appendix at 379. In place of these provisions, sec. 40.06(1)(em), Stats., was created in the budget act to make review by DETF discretionary as to protective occupation participants who are not state employees. Memorandum from Blair Testin, RRC/JSCRS Director of Retirement Research, to Senator Bob Jauch and Rep. Rick Grobschmidt, co-chairmen of RRC/JSCRS (June 19, 1989). Section 40.06(1)(em) provides in part: "The department may review any determination by a participating employer to classify an employe who is not a state employe as a protective occupation participant and may appeal the determination to the board by filing a written

---

[6]The Joint Legislative Interim Committee on Pension and Retirement Plans stated that a sound pension plan should be under government supervision. Report and Recommendations of the Joint Legislative Interim Committee on Pension and Retirement Plans, Senate Journal, Supplement, Sixty-Eighth Session at 8 (1947).

notice of appeal with the board."[7]

The budget bill retained sec. 40.06(1)(dm), Stats., which requires that the Department of Employment Relations approve each determination by a department head classifying a state employee as a protective occupation participant. The June 19, 1989 RRC/JSCRS Director's memo states: "These amendments together appear to tighten the procedures governing protective designation, and these may be desirable . . .." Memorandum from Blair Testin, RRC/JSCRS Director of Retirement Research, to Senator Bob Jauch and Rep. Rick Grobschmidt, co-chairmen of RRC/JSCRS (June 19, 1989).

The "greater study and development" recommended by JSCRS includes study of the appropriate classification of county jailers. Because of questions received by DETF regarding the retirement employment category of jailers, DETF surveyed the counties in 1985, asking for information as to their jailers. Memorandum from Blair Testin, RRC/JSCRS Director of Retirement Research, to Members of the Ad Hoc Committee on 40.65[8] Benefits (May 14, 1986) (concerning local jailer classification). The survey revealed that thirty-four counties classified jailers as protective occupation participants, while twenty-nine classified them as general employees. *Id.*

The memorandum stated:

> The DETF Board has reviewed appeals from jailers who are classified as general employees, and

---

[7] In fairness to WPPA, we note that it made its proposal before sec. 40.06(1)(em), Stats., became effective. However, the statute would have applied to the County's classification of jailers under WPPA's proposal.

[8] Section 40.65, Stats., provides special duty disability and death benefits to protective occupation participants and participating employees listed in sec. 40.02(48)(c), Stats.

the [DETF] has deemed that they do *not* meet the requirement[s] for protective designation under present statutes. The DETF Board felt that the legislature should investigate their arguments further, and consider whether statutory changes were appropriate.

*Id.* (emphasis in original).

The memorandum further stated: "If the legislature mandated all jailers to be classified as protectives, such action would ignore the local differences in job requirements." *Id.* In the memorandum, the Director of Retirement Research outlined alternatives that the Ad Hoc Committee could consider: do nothing; amend the definition of protective occupation participants to include jailers; expand the eligibility definition for benefits under sec. 40.65, Stats., to include any positions designated by the employer by unilateral action or collective bargaining; or amend the law to permit the employer to designate positions to be covered under the protective program even if they were not law enforcement or fire prevention service, if the positions otherwise would meet the requirements of frequent exposure to danger or peril and a requirement for high physical conditioning. *Id.* at 2. The Director of Retirement Research stated that the latter approach would allow employers to bargain on the protective designation. *Id.*

The Ad Hoc Committee considered the RRC staff memo at its meeting of May 14, 1986. Minutes, May 14, 1986 meeting of 40.65 Ad Hoc Committee of the Retirement Research Committee (RRC files). According to a June 29, 1988 memorandum by the RRC/JSCRS Director of Retirement Research to RRC members, the Ad Hoc Committee determined that there was no need to mandate all local jailers as protectives. The memorandum stated: "The Committee noted that the existing employer designation process allows county employers to

recognize the existing differences in duties and job descriptions from county to county." Memorandum from Blair Testin, RRC/JSCRS Director of Retirement Research, to RRC/JSCRS Members (June 29, 1988).

WERC notes that 1989 S.B. 352 specifically would have added county jailers to the list of employees deemed to be protective occupation participants, but the bill failed to pass. *See* 1989 S.B. 352, amending sec. 40.02(48)(am) and (c), Stats. WERC suggests that the failure of the bill may demonstrate that jailers are not deemed protective occupation participants presently unless they are specifically determined to be such by their employer. WERC also suggests, however, that the bill may have been intended simply to clarify that jailers already are protective occupation participants. It concedes that this interpretation is contradicted by the fact that the legislation would have conferred protective occupation participant status on jailers prospectively only.

In the 1991–92 legislative session a renewed effort was made to include county jailers in the positions listed in sec. 40.02(48)(am) and (c), Stats. Assembly bill 1991 A.B. 482 was virtually identical to 1989 S.B. 352. It was considered by JSCRS at a public hearing on February 20, 1992. The minutes of the JSCRS meeting show that the bill was supported by the La Crosse County Sheriffs Department and Deputy Sheriffs Association, the Wisconsin County Police Association, the Wisconsin Professional Police Association, the Wisconsin Sheriffs and Deputy Sheriffs Association and the American Federation of State, County and Municipal Employees. The bill was opposed by the Wisconsin Counties Association. Minutes, February 20, 1992 meeting of the JSCRS (RRC files). The bill failed to pass pursuant to Senate Joint Resolution #1. Assembly Journal, April 7, 1992.

It is the general rule that the failure of the legislature to enact a bill is not evidence of legislative intent. *State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 135, 221 N.W.2d 902, 905 (1974). "The nonpassage of a bill may be explainable for a number of reasons unrelated to the merits of the legislation." *Id.* We conclude, however, that the failure of the legislature to enact 1989 S.B. 352 or 1991 A.B. 482 is evidence of an understanding by the legislature and the proponents of the legislation that legislative action is necessary to permit counties to designate jailers as protective occupation participants without determining that they satisfy the requirements of sec. 40.02(48)(a), Stats.

Public employee retirement systems are unique in that legislative adjunct agencies oversee the systems and suggest and pass on legislation affecting the systems. The RRC "provid[es] a continuous review and study of the retirement benefits afforded by the state and . . . allocate[s] adequate study to the complexities of modern retirement programs." Section 13.51(1), Stats. No bill modifying a retirement system for public officers or employees may be acted upon by the legislature until it has been referred to JSCRS and the committee has submitted to the legislature a report as to the desirability of such proposal as a matter of public policy. Section 13.50(6)(a), Stats.

Here, RRC outlined to the Ad Hoc Committee on 40.65 Benefits alternative courses of legislative action. The Ad Hoc Committee determined that there was no need to mandate local jailers as protective occupation participants. The JSCRS did not recommend legislation which would have included county jailers in the enumeration of "protective occupation participant[s]" under

sec. 40.02(48)(am) and (c), Stats. We conclude that, in the unusual circumstances of this case, the failure of the legislature to include county jailers in the enumeration of protective occupation participants demonstrates that the legislature considers that county jailers are not protective occupation participants unless so determined by the county employer under sec. 40.02(48)(a), Stats. Without enabling legislation, the county employer may not submit that determination to the collective bargaining process.

## B.

We are also persuaded to our conclusion that the determination by the County of the status of jailers is not a mandatory subject of collective bargaining by comparing the provisions of MERA and the State Employment Labor Relations Act (SELRA). Under SELRA, a collective bargaining agreement between a state agency and its employees supersedes conflicting statutory provisions as to wages, hours, fringe benefits, and conditions of employment.[9] MERA does not contain a comparable provision. In *Glendale Professional Policemen's Ass'n,* the court noted that determining the scope of the municipal employer's duty to bargain under sec. 111.70, Stats., is particularly difficult because the statute does not contain a legislative resolution of statutory conflicts as does

---

[9]Section 111.93(3), Stats., provides in part:

[I]f a collective bargaining agreement exists between the employer and a labor organization representing employes in a collective bargaining unit, the provisions of that agreement shall supersede the provisions of civil service and other applicable statutes . . . related to wages, fringe benefits, hours and conditions of employment whether or not the matters contained in those statutes, rules and policies are set forth in the collective bargaining agreement.

SELRA. 83 Wis. 2d at 106, 264 N.W.2d at 602. The failure of the legislature to include in MERA a provision giving collective bargaining agreements precedence over conflicting statutes evidences an intent that such priority does not exist.

## C.

We are further persuaded to our conclusion by the fact that when the legislature has wished to permit the employer to classify an employee as a protective occupation participant without requiring that the employer determine that the principal duties of the participant involve active law enforcement or active fire suppression or prevention, it has done so by specific legislation. Section 40.02(48)(bm), Stats., was created by 1989 Wis. Act 357, which permits a participating employer to classify an emergency medical technician (EMT) as a protective occupation participant, notwithstanding sec. 40.02(48)(a), Stats. Further, a determination by the employer under sec. 40.02(48)(bm) may not be reviewed by DETF or appealed to ETFB, unless it involves the classification of a state employee.

In the May 14, 1986 memorandum the RRC/JSCRS Director of Retirement Research advised the Committee that one alternative as to local jailers was to amend the Wisconsin retirement system law and sec. 40.65, Stats., to permit the employer to designate positions as "protective" even if the employees were not involved in law enforcement or fire prevention. The memorandum stated that "[t]his approach would allow employers to bargain on the protective designation, and to recognize the job requirements for the position and also the costs involved in the protective program." The legislature

174

adopted that approach as to EMT's but has rejected that approach as to county jailers.

It is evident that the classification of local jailers is highly controversial. It is also evident that the legislature and the proponents of protective occupation participant status for local jailers consider legislative action to be required before their status may become a mandatory subject of bargaining.

## D.

An employee who believes that he or she has been improperly classified as a general employee is not without remedy. The employee may appeal that determination to DETF and ETFB. Section 40.06(1)(e), Stats.[10] A decision of ETFB is reviewable by certiorari pursuant to sec. 40.08(12), Stats.

Where a statute sets forth a procedure for review of an administrative decision, such remedy is exclusive, unless the remedy is inadequate. *Nodell Inv. Corp. v. Glendale,* 78 Wis. 2d 416, 422, 254 N.W.2d 310, 314 (1977). This requirement is sometimes termed the exhaustion of remedies doctrine and sometimes the primary jurisdiction doctrine. Here, the exhaustion of rem-

---

[10]Section 40.06(1)(e), Stats., provides in part:

1. An employe may appeal a determination under par. (d), including a determination that the employe is not a participating employe, to the department by filing a written appeal with the department . . . .. The department shall investigate the appeal and mail a report of its determination to the employe and the participating employer or state agency.

2. Either the employe or the participating employer . . . may appeal the department's determination under subd. 1 to the board by filing a timely appeal with the department. If an appeal is not filed as required under this subdivision, the determination from which an appeal is permitted is final.

edies doctrine applies rather than the primary jurisdiction doctrine because the administrative process began when the County addressed the classification of its jailers under sec. 40.02(48)(a), Stats. *See Nodell,* 78 Wis. 2d at 427 n.13, 254 N.W.2d at 316 n.13 (if administrative procedure has begun, the primary jurisdiction rule does not apply).

The premise of the exhaustion rule is that the administrative remedy: (1) is available to the party on his or her initiative, (2) is relatively rapid, and (3) will protect the party's claim of right. *Nodell,* 78 Wis. 2d at 424, 254 N.W.2d at 315. WPPA has not shown that the appeal procedure under sec. 40.06(1)(e), Stats., is inadequate in these or other respects.

The exhaustion rule is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. *Castelaz v. Milwaukee,* 94 Wis. 2d 513, 532, 289 N.W.2d 259, 268 (1980) (quoting *Nodell,* 78 Wis. 2d at 424, 254 N.W.2d at 315). However, the principle which underpins the doctrine supports equally the proposition that collective bargaining should not supplant the administrative remedy provided by sec. 40.06(1)(e), Stats. The exhaustion doctrine is premised on the notions that the expertise that comes with experience, and the fact-finding facility that comes with flexible procedures, enables the administrative agency to perform a valuable public function. *Wisconsin Collectors Ass'n v. Thorp Finance Corp.,* 32 Wis. 2d 36, 44, 145 N.W.2d 33, 36 (1966). While *Wisconsin Collectors* discussed the primary jurisdiction rule, we noted in *Village of Thiensville v. DNR,* 130 Wis. 2d 276, 282 n.2, 386 N.W.2d 519, 522 n.2 (Ct. App. 1986), that the doc-

trines of exhaustion of remedies and primary jurisdiction have developed into complementary parts of a general principle.

In *Village of Thiensville,* we extended the exhaustion doctrine to competing administrative agencies. We stated that the spirit of the doctrine is served by allowing the agency with the expertise and experience to retain the right of first review. *Village of Thiensville,* 130 Wis. 2d at 282, 386 N.W.2d at 522. We conclude that the goals of the exhaustion/primary jurisdiction principle—agency expertise and fact-finding facility—are best served by requiring that an employee who wishes to contest the employer's failure or refusal to classify the employee as a protective occupation participant appeal that determination to DETF and ETFB. It violates these goals to substitute for the administrative and judicial processes the collective bargaining process, where the decision as to whether a participating employee shall be classified as a protective occupation participant may be made by an arbitrator lacking the expertise and experience of DETF or ETFB.

### III.

### EFFECT OF ENUMERATION OF DEPUTY SHERIFFS IN SECTION 40.02(48)(am), STATS.

We next consider WERC's conclusion that the County's role in classifying jailers as protective occupation participants is "ministerial." WERC concluded that jailers could be classified as protective occupation participants simply by being employed in one of the capacities listed in sec. 40.02(48)(am), Stats. Because a jailer may meet the definition of "deputy sheriff" in sec.

177

40.02(48)(b)3, Stats., and deputy sheriff is listed in sec. 40.02(48)(am), WERC concluded that "whatever role remains for the County to fulfill . . . if . . . jailers are to become protective occupation participants appears to be a ministerial one."[11] We disagree.

The listing of "deputy sheriff" in sec. 48.02(48)(am), Stats., does not automatically confer protective occupation participant status upon jailers. A jailer must also meet the definition of "protective occupation participant" in sec. 40.02(48)(a), Stats. As we have seen, thirty-four counties have concluded that their jailers meet the definition, while twenty-nine have concluded that their jailers do not. The determination whether a jailer meets the definition of "protective occupation participant" is not ministerial because the participating employer must determine whether the participant's "principal" duties involve "active" law enforcement, "frequent" exposure to a "high degree" of danger or peril, and require a "high degree" of physical conditioning. The determination requires fact finding and the exercise of judgment.

## IV.

## DECISION

For the foregoing reasons, we conclude that the classification of county jailers under sec. 40.02(48)(a), Stats., is not a mandatory subject of bargaining under sec. 111.70(1)(a), Stats. We therefore reverse the order affirming WERC's declaratory ruling.

*By the Court.*—Order reversed.

---

[11]Presumably, the County's "ministerial" duty is to certify the names of its jailers to DETF pursuant to sec. 40.06(1)(d), Stats.

EICH, C.J. *(dissenting)*. I would affirm the circuit court because I believe the WPPA proposal is "primarily related" to wages and thus a mandatory subject of bargaining, *City of Brookfield v. WERC*, 153 Wis. 2d 238, 242-43, 450 N.W.2d 495, 497 (Ct. App. 1989), and because I disagree with the majority's determination that the provisions of secs. 40.02(48)(am) and (b)3, Stats., are to be given no weight in determining whether the La Crosse County deputy sheriffs working as jailers are engaged in a "protective occupation." To me, those statutory sections are plain and unambiguous and compel affirmance of the trial court's decision. Nor would I, as the majority has done, rely so heavily on recitations of legislative history not cited, relied on or argued to us by the parties to the appeal.

The county's argument, and the majority's decision, appear to give controlling weight to language in sec. 40.02(48)(a), Stats., which they consider to delegate to the employer full discretion to determine who is, and who is not, a "[p]rotective occupation participant." Doing so, they give no weight to the subsections that follow.

Section 40.02(48)(a), Stats., does, as the majority points out, state that the term " '[p]rotective occupation participant' means any [employee] whose principal duties are determined by the . . . employer . . . to involve active law enforcement . . . [and] require frequent exposure to a high degree of danger or peril and . . . require a high degree of physical conditioning." But that does not end the matter.

The following subsection, sub. (am), goes on to state that the term "[p]rotective occupation participant" also "includes any [employee] . . . who is a . . . deputy sheriff . . .." And a succeeding subsection, sub. (b)3, states that a "deputy sheriff" is any employee of a sheriff's office

179

other than one "whose principal duties are those of a telephone operator, clerk, stenographer, machinist or mechanic . . .." I thus read the several subsections of sec. 40.02 to designate as "protective occupation participants" persons in certain named occupations, such as that of a deputy sheriff (unless the persons in those occupations are assigned to specific non-law enforcement-related duties such as those of a clerk, stenographer, etc.) *and* other employees not in traditional law enforcement positions whose duties are nonetheless determined by the employer to involve active law enforcement (*see* sec. 40.02(48)(a)).

There is no question that a jailer is a deputy sheriff and that jailers' duties are not of the "non-law enforcement" type just mentioned. It follows, I believe, that they are protective occupation participants within the meaning of sec. 40.02, and that both the WERC and the circuit court correctly decided the issues brought before them. I therefore respectfully dissent from the position taken by my colleagues in this case.